UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
THOMAS GESUALDI, LOUIS BISIGNANO,      :
DARIN JEFFERS, MICHAEL O'TOOLE,         :
MICHAEL BOURGAL, FRANK H. FINKEL,       :
JOSEPH A. FERRARA, SR., MARC HERBST,    :          **REPORT AND RECOMMENDATION**
DENISE RICHARDSON, and THOMAS           :
CORBETT, as trustees and fiduciaries of the Local :          19 Civ. 4132 (LDH) (VMS)
282 Welfare Trust Fund, the Local 282 Pension :
Trust Fund, the Local 282 Annuity Trust Fund, the :
Local 282 Job Training Trust Fund and the Local :
282 Vacation and Sick Leave Trust Fund,       :
                                        :
                    Plaintiffs,         :
                                        :
              -against-                 :
                                        :
J.H. Reid, General Contractor,          :
                                        :
                    Defendant.          :
------------------------------------------------------------ X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiffs Thomas Gesualdi, Louis Bisignano, Darin Jeffers, Michael O'Toole, Michael

Bourgal, Frank H. Finkel, Joseph A. Ferrara, Sr., Marc Herbst, Denise Richardson and Thomas

Corbett, as trustees and fiduciaries of the Local 282 Welfare Trust Fund ("Welfare"), the Local

282 Pension Trust Fund ("Pension"), the Local 282 Annuity Trust Fund ("Annuity"), the Local

282 Job Training Trust Fund ("Job Training") and the Local 282 Vacation and Sick Leave Trust

Fund ("Vacation") (collectively referred to as "Plaintiffs," "Trustees" or "Funds") brought this

action against Defendant J.H. Reid, General Contractor ("Defendant") pursuant to the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and Section 301

of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, alleging that

Defendant failed to make required employer contributions owed to Plaintiffs under a collective

bargaining agreement.  See generally Complaint ("Compl."), ECF No. 1.  Before this Court on

referral from the Honorable LaShann DeArcy Hall is Plaintiffs' motion for default judgment. See ECF No. 17.

This Court respectfully recommends that Plaintiffs' motion for default judgment be granted in part and denied in part as explained below.

## I.      FACTUAL BACKGROUND FROM COMPLAINT

The following facts, insofar as they are related to questions of liability in this case, are drawn from the complaint, as well as the documents incorporated by reference into the complaint.[1]  The documents incorporated by reference include Exhibits 1 through 8, which are annexed to the Declaration of Plaintiffs' Senior Collections Clerk Joseph Puccio ("Puccio Decl."), ECF No. 18, as follows: (1) the trust agreement establishing the Funds, Exh. 1, ECF No. 18-1; (2) the operative collective bargaining agreement, Exh. 2, ECF No. 18-2; (3) Defendant's executed authorization to be bound to the operative collective bargaining agreement for the period of July 1, 2013 through June 30, 2017, Exh. 3, ECF No. 18-3; (4) remittance reports, Exh. 4, ECF No. 18-4; (5) delinquency letters, Exh. 5, ECF No. 18-5; (6) contribution demand letters, Exh. 6, ECF No. 18-6; (7) audit cancellation letters, Exh. 7, ECF No. 18-7; and (8) audit demand letters, Exh. 8, ECF No. 18-8.  See Compl. ¶¶ 6-8, 12, 30, 34-37, 38-48.

### A.  The Parties

The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. § 1002(3) and § 1002(37), with their principal

---

[1] Rule 10(c) of the Federal Rules of Civil Procedure provides that a pleading includes any statements adopted by reference.  Fed. R. Civ. P. 10(c); see Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (holding that a complaint is deemed to include any written instruments incorporated by reference and documents integral to the complaint); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (holding that the complaint is deemed to include any documents incorporated by reference).

place of business at 2500 Marcus Avenue, Lake Success, New York 11042.  Compl. ¶ 4.  The

Funds were established pursuant to the terms of various collective bargaining agreements

between Building Material Teamsters Local 282, a labor organization representing workers in an

industry affecting commerce, and various employers, including Defendant, which are required to

make contributions to the Funds on behalf of their workers covered by the collective bargaining

agreements.  Id. ¶ 6.  The Funds provide various pension, health and welfare, annuity, job

training, vacation and sick leave, and legal services benefits to covered workers, retirees and

their dependents.  Id. ¶ 7.  The Funds are third-party beneficiaries of the collective bargaining

agreements, and they are maintained pursuant to the terms of the Amended and Restated

Agreement and Declaration of Trust ("Trust Agreement"), which is incorporated by reference

into the collective bargaining agreements.  Id. ¶ 7.  The collective bargaining agreements and the

Trust Agreement are plan documents within the meaning of Section 502(a)(3) of ERISA, 29

U.S.C. § 1132(a)(3).  Id. ¶ 8.

The Funds are jointly administered by a Board of Trustees, with equal representation of

labor and management representatives in accordance with Section 302(c)(5) of the LMRA, 29

U.S.C. § 186(c)(5).  Id. ¶ 5.  Plaintiffs are trustees of the Funds and, collectively, are the "plan

sponsor" within the meaning of Section 3(l6)(B)(iii) of ERISA, 29 U.S.C. § 1002(16)(B)(iii).  Id.

¶ 3.  Trustees are fiduciaries of the Funds, as defined in Section 3(21)(A) of ERISA, 29 U.S.C. §

1002(21)(A).  Id. ¶ 3.

At all times relevant to this action, Defendant was a for-profit New Jersey corporation

engaged in the trucking business in the State of New York and having offices for doing business

located at 3230 Hamilton Boulevard, South Plainfield, New Jersey 07080.  Id. ¶¶ 9-10.  At all

times relevant to this action, Defendant was an "Employer" within the meaning of Section 3(5)

of ERISA, 29 U.S.C. § 1002(5), and Article I, Section 1 of the Trust Agreement.  Id. ¶ 11.

Venue is proper in this District pursuant to Sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. § 1132(e)(2) and § 1451(d), because the Funds are administered in this District.  Id. ¶ 2.

### B.  The CBA, Trust Agreement And Defendant

As relevant here, one of these collective bargaining agreements was the New York City Heavy Construction & Excavating Industry Contract in effect for the period of July 1, 2013, through June 30, 2017 (hereinafter "the CBA").  Id. ¶ 12; Puccio Decl. Exh. 2.  Defendant was a signatory to, or otherwise bound to and by, the CBA.  Compl. ¶ 12; Puccio Decl. Exhs. 2-3.  Defendant also agreed to be bound by the Trust Agreement incorporated by reference into the CBA, and the CBA expressly provides that Defendant as a signatory employer is bound to the Trust Agreement.  Compl. ¶¶ 13-14; Puccio Decl. Exhs. 1-3.

### C.  The CBA, Trust Agreement And Defendant's Fund Contribution Obligations

At all times relevant, the CBA required Defendant to submit remittance reports to the Funds which identify the employees who performed work covered by the CBA and to state the number of hours each such employee worked in covered employment.  Compl. ¶¶ 15, 28; Puccio Decl. Exh. 2.  The Trust Agreement also required Defendant to submit to periodic audits by producing its books and records and those of businesses under its common control within 20 days of the Trustees' request.  Compl. ¶¶ 17, 23-25, 27, 42; Puccio Decl. Exh. 1 at 25-26.  The CBA also required Defendant to remit contributions to the Funds on a monthly basis on behalf of all employees who performed CBA-covered work; due contributions were calculated from remittance or audit reports at specified rates for each covered hour of work subject to certain limitations.  Compl. ¶¶ 16, 33; Puccio Decl. Exh. 2.

Under the Trust Agreement, if Defendant failed to timely submit the required remittance

4

reports and/or pertinent books and records for audit, Defendant was required to pay an increased monthly contribution by adding 10% to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) remittance reports that Defendant submitted.  Compl. ¶ 17; Puccio Decl. Exh. 1 at 25-26.  Then that total number of covered hours is multiplied by the current contribution rates to arrive at the Defendant's liability for monthly contributions on the months Defendant did not timely submit remittance reports and/or submit to audit.  Id.

The Trust Agreement provides that if Defendant fails to remit contributions by the due date, Defendant is liable to the Funds for (i) the delinquent contributions; (ii) interest at the rate of 1.5% per month (18% per year) from the date when payment was due to the date when payment was made; (iii) liquidated damages in an amount equal to the greater of (a) the amount of interest charged on the unpaid contributions, or (b) 20 percent of the unpaid contributions; and (iv) the Funds' attorneys' fees and costs.  Compl. ¶¶ 18, 20-21; Puccio Decl. Exh. 1 at 27-28. The Trust Agreement also authorizes the Funds' Trustees to bring collection actions to enforce contribution obligations or for an injunction compelling audit, and it requires Defendant to pay Plaintiffs' reasonable attorneys' fees and costs incurred in prosecuting such actions.  Compl. ¶¶ 19, 22; Puccio Decl. Exh. 1 at 27-28.

### D. Defendant's Failure To Remit Contributions To The Funds Corresponding To Remittance Reports Submitted For The Period Of September 2014 Through July 2016

Defendant submitted remittance reports for the period of September 2014 through July 2016, but it did not pay corresponding contributions to the Funds; according to Plaintiffs, Defendant's unpaid contributions to the Funds for this period total $149,860.07.  See Compl. ¶¶ 33-35; Puccio Decl. Exh. 4.  The Funds demanded that Defendant pay this debt, but Defendant

has not done so.  See Compl. ¶¶ 36-37; Puccio Decl. Exh. 5.

**E.    Defendant's Failure To Remit Contributions And Damages To The Funds In Connection With Audit 16-0933**

Pursuant to the Trust Agreement, Defendant submitted pertinent books and records for audit for the period of September 1, 2014, through August 28, 2016 (hereinafter "Audit 16-0933").  Compl. ¶ 38.  Audit 16-0933 determined that Defendant's remittance reports for the audit period, which include the remittance reports described above, underreported due contributions in the amount of $28,258.81 in unpaid contributions for that period.  Compl. ¶¶ 38-39.  Although Plaintiffs sent a copy of Audit 16-0933 to Defendant with a demand that it remit payment of due contributions, interest, and $1,630.00 in audit-related costs, Defendant has not complied.  Compl. ¶¶ 39-40; Puccio Decl. Exh. 7.  Pursuant to this same audit, Defendant refused to produce books and records for companies JH Reid On Site Recycling and JH Reid Holding 1, LLC.  See Compl. ¶¶ 41-45.

**F.    Defendant's Failure To Submit Remittance Reports Or Remit Contributions To The Funds For The Period Of August 2016 Through June 2017**

Defendant failed to submit remittance reports to the Funds for the period of August 2016 through June 2017.[2]  See Compl. ¶¶ 28-32; Puccio Decl. Exh. 6.  The Funds made a demand that Defendant submit the missing remittance reports for this period, but Defendant has not complied.  See id.

---

[2] Plaintiffs' complaint alleges that Defendant has failed to submit remittance reports from "August 2016 through the present."  Compl. ¶ 29.  The demand letters Plaintiffs attach as Puccio Decl. Exh. 6 demand outstanding remittance reports only for the period of August 2016 through June 2017.  Id.  As such, the Court will describe the relevant period as August 2016 through June 2017.

### G.  Defendant's Failure To Submit To Audit For The Period Of August 29, 2016, Through December 31, 2017

Pursuant to the Trust Agreement, Plaintiffs sent Defendant three demands requesting that it produce its books and records for an audit for the of period August 29, 2016, through December 31, 2017.[3]  Compl. ¶ 46; Puccio Decl. Exh. 8.  Defendant has not complied such that this audit has never been performed.  Compl. ¶ 47.

## II.    PROCEDURAL HISTORY

On July 26, 2019, after commencing this action, Plaintiffs served Defendant by causing a copy of the complaint, summons and other records to be delivered to an individual named Carmela Majuri at 3230 Hamilton Boulevard, South Plainfield, New Jersey 07080, which Plaintiffs allege is the address at which Defendant has offices for doing business.  See Compl. ¶ 9; ECF No. 7.  After Defendant failed to answer or otherwise respond by August 16, 2019, Plaintiffs requested entry of default from the Clerk of the Court.  See ECF No. 8.  The Clerk made an entry of default, and Plaintiffs filed the instant motion for default judgment, which the Honorable LaShann DeArcy Hall referred for a report and recommendation.  See ECF Nos. 9, 17.  In subsequent proceedings the Court requested, and Plaintiffs filed, supplemental information demonstrating that service upon Ms. Majuri was sufficient.  See ECF Nos. 25-26, 28.

In their motion for default judgment, Plaintiffs seek (i) payment of self-reported unpaid contributions for the period of September 2014 through July 2016; (ii) payment of unpaid contributions determined to be due and owing to the Funds by Audit 16-0933; (iii) an order

---

[3] Plaintiffs' complaint alleges that Defendant has failed to submit to audit for the "period commencing August 29, 2016."  Compl. ¶ 46.  The demand letters Plaintiffs attach as Puccio Decl. Exh. 8 demand Defendant submit to audit for the period of "August 29, 2016 through December 31, 2017."  Id.  As such, the Court will describe the relevant period as August 29, 2016, through December 31, 2017.

compelling Defendant to submit remittance reports and contributions for the period of August 2016 through June 2017 and to submit to audit for the period of August 29, 2016, through June 30, 2017,[4] and/or pay estimated contributions for the period of September 2016 through June 2017; (iv) an order compelling Defendant to submit books and records of JH Reid On Site Recycling and JH Reid Holding 1, LLC for the period of September 1, 2014, through August 28, 2016; and (v) collection of interest, liquidated damages, audit costs, audit cancellation fees, and reasonable attorneys' fees and costs.  Pls.' Memo., ECF No. 21 at 1.

## III.   LEGAL STANDARDS

Fed. R. Civ. P. 55 establishes the procedure to obtain a default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993) (citing Fed. R. Civ. P. 55).  First, if a party failed to plead or otherwise defend against an action, the "clerk must enter the party's default." See Fed. R. Civ. P. 55(a).  "The entry of default is therefore not discretionary."  Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186 (2d Cir. 2015).  Second, the moving party must apply to the court for a default judgment after the default has been entered, as Plaintiffs have done here.  See Fed. R. Civ. P. 55(b); see also ECF Nos. 17-21, 23.  If the defaulting party still fails to appear or move to set aside the default pursuant to Fed. R. Civ. P. 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b)(2).

A party's default constitutes a concession of all well-pleaded allegations in the complaint, except for those allegations relating to the amount of damages.  See Fed. R. Civ. P. 8(b)(6); Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. &

---

[4] Although Plaintiffs' demand letters demand Defendant submit to audit for the period of "August 29, 2016 through December 31, 2017," Puccio Decl. Exh. 8, Plaintiffs seek an order that Defendant submit to audit for only August 29, 2016 through June 30, 2017.

Training Fund & Other Funds v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). The court must conduct an inquiry sufficient to determine the amount of damages to a "reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Cement & Concrete Workers, 699 F.3d at 232. This inquiry may be accomplished by evaluating the affidavits and documentary evidence submitted by the plaintiff or by conducting an evidentiary hearing to evaluate the amount of damages to be awarded against a defaulting defendant. See Fed. R. Civ. P. 55(b)(2); Finkel v. Romanowicz, 577 F.3d 79, 87 (2d Cir. 2009) ("Rule 55(b) commits this decision to the sound discretion of the district court.").

"In order to obtain default judgment, a plaintiff must first properly serve a defaulting defendant with a copy of the summons and complaint in accordance with Rule 4 of the Federal Rules of Civil Procedure and local rules." Advanced Cap. Com. Grp., Inc. v. Suarez, No. 09 Civ. 5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013) (adopting report & recommendation); see Arthur F. Williams, Inc. v. Helbig, 208 F.R.D. 41, 44 n.8 (E.D.N.Y. 2002) (noting that improper service of process would render a default judgment void).

## IV.    SERVICE OF SUMMONS AND COMPLAINT

Fed. R. Civ. P. 4(h)(1)(A) provides that service on a corporation may be effected pursuant to Fed. R. Civ. P. 4(e)(1), which in turn provides that service may be effected in accordance with the service rules of the state where the district is located. New York state law allows for service upon a corporation by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. § 311(a)(1). The New York Court of Appeals has noted that this statute recognizes "any other agent authorized by appointment" and

that a "corporation is free to choose its own agent for receipt of process without regard to title or position." Fashion Page, Ltd. v. Zurich Ins. Co., 50 N.Y.2d 265, 272 (1980). "In such a case the process server cannot be expected to know the corporation's internal practices. Reliance may be based on the corporate employees to identify the proper person to accept service." Id.; see id. at 273 (holding service upon person who lacked authority was reasonable where process server announced he was there to serve summons, receptionist referred him to a particular individual, and that person stated she had authority to accept process on behalf of corporation). In short, a corporation regularly doing business in New York "generally cannot be heard to complain that the summons was delivered to the wrong person when the process server has gone to its offices, made proper inquiry of the defendant's own employees, and delivered the summons according to their directions." Id. at 273.

Federal courts evaluating claims that service was ineffective[5] must weigh the circumstances of the particular case and the reasonableness of the process server's perception that a particular employee was authorized to accept service for a corporate defendant. See, e.g., Old Republic Ins. Co. v. Pacific Fin. Servs. of Am., Inc., 301 F.3d 54, 57-58 (2d Cir. 2002) (affirming district court's denial of motion to vacate default judgment where process server delivered summons to individual identified by corporate security as an officer authorized to accept service on behalf of corporation, and office manager's affidavit did not refute those facts, finding process server's reliance was reasonable); Amnay v. Del Labs, 117 F. Supp. 2d 283, 286-87 (E.D.N.Y. 2000) (corporation was not properly served where pro se plaintiff delivered summons to receptionist without first attempting service on any corporate official); Nationwide Mut. Ins. Co. v. Kaufman, 896 F. Supp. 104, 105-06 (E.D.N.Y. 1995) (where process server with

---

[5] The Court notes that Defendant has never objected to the method of service here.

10

eighteen years-experience advised he was there to serve legal papers on defendants, and company comptroller accepted the papers, process server's belief that comptroller was either a managing agent or authorized to accept service was reasonable) (adopting report & recommendation); Est. of Barrat v. Phoenix Mut. Life Ins. Co., 787 F. Supp. 333, 336 (W.D.N.Y. 1992) (process server's belief that receptionist was authorized to accept service not reasonable where it was clear that she did not tell him she was so authorized).

Here, the process server served the summons and complaint at Defendant's business address to Ms. Majuri, a person who identified herself as Defendant's office manager. ECF No. 7; ECF No. 25 at 2, ECF No. 28 at 1, 3. Ms. Majuri was willing to accept service of the legal documents. ECF No. 25 at 3; ECF No. 28 at 3. The process server had also researched Ms. Majuri, and found a LinkedIn profile in which she represented herself as "Chief Administrative Officer" of Defendant. ECF No. 25 at 2, 6. As such, service was reasonably effected in accordance with N.Y. C.P.L.R. § 311(a)(1), as it was reasonable to conclude Ms. Majuri was either a managing agent or authorized to accept service.[6, 7]

---

[6] Based on Plaintiffs' submission at ECF No. 25, it appears that Ms. Majuri may not have been an employee of Defendant at the time she was served, despite her representation as such. See ECF No. 25 at 12, Tr. at 11:3-8 (stating Defendant stopped operating a year to a year and a half prior to deposition). "That [Ms. Majuri] may not have been a corporate officer [at the time of service] in fact is not responsive to the question of whether it was reasonable under the circumstances to serve [her] and it does not excuse [Defendant] from failing to answer the complaint." See Old Republic Ins., 301 F.3d at 58 (citing Fashion Page, 50 N.Y.2d at 272-73); Cent. Savannah River Area Res. Dev. Agency, Inc. v. White Eagle Int'l., Inc., 110 A.D.2d 742, 742 (2d Dep't 1985) (affirming entry of default judgment and denial of motion to vacate default, finding process server who served former employee "made the appropriate inquiries" and "acted reasonably, and with due diligence").

[7] The Court also notes that Plaintiffs' counsel provided a copy of the summons and complaint to Defendant's owner and his attorney over 20 months ago, on December 10, 2019. ECF No. 25 at 3.

## V.    ERISA LIABILITY

The complaint in this case contains a well-pleaded ERISA claim.  ERISA is a comprehensive legislative scheme governing the administration of employee benefit funds for the purpose of protecting employees.  See HMI Mech. Sys., Inc. v. McGowan, 266 F.3d 142, 148 (2d Cir. 2001) (citing Burgio & Campofelice, Inc. v. New York State Dep't of Lab., 107 F.3d 1000, 1007-08 (2d Cir. 1997)).  Under ERISA, an employer need not provide any particular benefits, but once an employer elects to provide benefits, the statute governs the terms of administration of the benefits.  See Burgio, 107 F.3d at 1007.  Section 515 of ERISA mandates that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.  Plan fiduciaries may bring civil actions to enforce the provisions of such plans and/or collective bargaining agreements.  See 29 U.S.C. § 1132(a)(3).

On a motion for default judgment, factual allegations in the complaint that a defendant failed to comply with the payment rules established by the provisions of a collective bargaining agreement are sufficient to establish an ERISA violation.  See Moulton Masonry & Constr., 779 F.3d at 188 ("The allegations in the complaint when accepted as true" are "sufficient to render the corporate defendant liable under ERISA."); Finkel, 577 F.3d at 85; Local 813 Ins. Tr. Fund v. Bradley Funeral Serv., Inc., No. 11 Civ. 2885 (ARR) (RLM), 2012 WL 3871759, at *3 (E.D.N.Y. Aug. 10, 2012) (finding that the complaint's "uncontested factual allegations are sufficient to state a claim that defendant violated the terms of the CBA and, by extension, ERISA"), R&R adopted, 2012 WL 3871755 (Sept. 4, 2012); La Barbera v. Fed. Metal & Glass

Corp., 666 F. Supp. 2d 341, 348 (E.D.N.Y. 2009) ("[T]he allegations that defendant has failed to comply with its contractual obligations and with the statutory requirements of ERISA are sufficient to state claims on which relief is warranted.") (adopting report & recommendation).

In the instant case, Plaintiffs allege that Defendant is an "employer" within the meaning of ERISA, see Compl. ¶ 11; that the ERISA Funds (i.e., the Annuity, Pension, Welfare, Job Training, and Vacation Funds) are "employee benefit plans" and "multiemployer plans" within the meaning of ERISA, id. ¶ 4; and that the named Trustees are plan fiduciaries as defined by ERISA, id. ¶ 3. Plaintiffs further allege that Defendant was bound by the CBA and Trust Agreement; that Defendant was obligated to submit remittance reports, submit to audit and make contributions to the ERISA Funds pursuant to the CBA and Trust Agreement; and that Defendant failed to comply with these obligations. Id. ¶¶ 12-16, 23-25, 28-48. These factual allegations supported by the referenced documents in the unanswered complaint are sufficient to establish liability under ERISA. This Court thus respectfully recommends that the Court grant Plaintiffs' motion for a liability default judgment against Defendant on their ERISA claim.

## VI. LMRA LIABILITY

Plaintiffs have also alleged a valid cause of action under the LMRA. Section 301 of the LMRA provides a cause of action against an employer in an industry affecting commerce for the "violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "Under Section 301 of the LMRA, an employer may be held liable for failing to pay assessments or failing to remit dues withheld from employee paychecks to the union as required by a collective bargaining agreement." Sullivan v. Marble Unique Corp., No. 10 Civ. 3582 (NGG)

(LB), 2011 WL 5401987, at *3 (E.D.N.Y. Aug. 30, 2011), R&R adopted, 2011 WL 5402898 (Nov. 4, 2011).

Here, Defendant is alleged to be an employer in an industry affecting commerce within the meaning of the LMRA, see Compl. ¶¶ 9-11, and, as noted above, Defendant is bound by the CBA.  Plaintiffs allege that Defendant failed to submit all required remittance reports and to submit to audit, as well as failed to pay all required remittance contributions.  Id. ¶¶ 28-48. These allegations are sufficient to establish liability under the LMRA.  See, e.g., Trs. of the Local 183 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc., No. 16 Civ. 318 (SJ) (SJB), 2018 WL 4268907, at *3-4 (E.D.N.Y. Aug. 8, 2018) (recommending that an employer's failure to pay dues and assessments pursuant to a collective-bargaining agreement constitutes a breach of the LMRA), R&R adopted, 2018 WL 4266038 (Sept. 5, 2018); Sullivan, 2011 WL 5401987, at *3 (finding LMRA liability where plaintiffs alleged a breach of a collective bargaining agreement). This Court thus respectfully recommends that the Court grant Plaintiffs' motion for a liability default judgment against Defendants on their LMRA claim.

## VII.    DAMAGES

In assessing damages in connection with a default judgment motion, a court cannot rest upon the well-pleaded facts in the complaint.  See Greyhound Exhibitgroup, 973 F.2d at 158 ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.") (citing Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974); Fed. R. Civ. P. 8(d)).  Rather, the amount of damages awarded, if any, must be ascertained "with reasonable certainty."  Credit Lyonnais Sec. (USA), 183 F.3d at 155.  A court may evaluate the fairness of a proposed damages award by relying on affidavits and documentary evidence.  See Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993).

Although damages must be based on actual evidence, an evidentiary hearing is not required, "as long as . . . there [is] a basis for the damages specified in the default judgment." Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).

In support of their application for damages, Plaintiffs submitted the following declarations and exhibits: the Puccio Declaration and exhibits described above; the Declaration of Plaintiffs' Payroll Auditor Diego Remache ("Remache Decl."), ECF No. 19, with the audit report for Audit 16-0933, Exh. 1, ECF No. 19-1; the Declaration of Plaintiffs' counsel Arthur J. Muller, III ("Muller Decl."), ECF No. 20; and a copy of the billing summaries and litigation costs expended on this action, Exh. 4, ECF No. 20-4.

Section 502 of ERISA specifies that the damages to be awarded when judgment is entered in favor of a trustee seeking to recover unpaid contributions owed to an employee benefit plan include:

(A)  the unpaid contributions,

(B)  interest on the unpaid contributions,

(C)  an amount equal to the greater of—

   (i)   interest on the unpaid contributions, or

   (ii)  liquidated damages provided for under the plan in an amount not in excess
         of 20% (or such higher percentage as may be permitted under Federal or
         State law) of the amount determined by the court under subparagraph (A),

(D)  reasonable attorney's fees and costs of the action, to be paid by the defendant,
      and

(E)  such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); see Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1505-08 (2d Cir. 1995). "An award of damages is also available under LMRA for those contributions not covered

15

by ERISA but unpaid or paid late in violation of a collective bargaining agreement . . . or other contract." Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D v. A.G. Constr. Corp., No. 13 Civ. 3590 (ENV) (SMG), 2014 WL 354647, at *4 (E.D.N.Y. Jan. 31, 2014) (adopting report & recommendation). "LMRA damages are limited to those permitted in the relevant CBA and trust agreements." Id.

## A. Unpaid Contributions

"Under ERISA, where a plan recovers a judgment in its favor, a plaintiff is entitled to have the defendant pay the full amount of unpaid contributions." Gesualdi v. Magnolia Pro Trucking, Inc., No. 11 Civ. 4082 (ADS) (AKT), 2012 WL 4036119, at *5 (E.D.N.Y. Aug. 20, 2012) (citing 29 U.S.C. § 1132(g)(2)(A)), R&R adopted, 2012 WL 4035779 (Sept. 11, 2012).

### 1. Unpaid Self-Reported Contributions

Plaintiffs seek $149,850.07 in unpaid self-reported contributions from remittance reports for the period of September 2014 through July 2016. See Pls.' Memo. at 5; Puccio Decl. ¶ 27, Exh. 4; Compl. ¶¶ 34-35. Pursuant to the CBA and Trust Agreement, Defendant was required to submit remittance reports and pay contributions on behalf of its workers who performed work covered by the CBA. Compl. ¶ 33; Puccio Decl. ¶ 26. Defendant self-reported hours worked in covered employment, but it failed to remit the full amount of self-reported contributions. Compl. ¶ 34; see Puccio Decl. ¶ 27. The Funds review of remittance reports and payments determined the following amounts due and owing to the following Funds:

| Welfare | Pension | Annuity | Job Training | Vacation | | TOTAL |
|---------|---------|---------|--------------|----------|---|-------|
| $54,647.26 | $41,383.55 | $39,201.83 | $359.86 | $17,992.85 | | $153,585.35 |

Puccio Decl. Exh. 5 at 1, 3. From this total, $153,585.35, Plaintiffs deduct $3,735.28 for

16

payments associated with August 2014 because that amount was included in a prior judgment. Puccio Decl. ¶ 29 n.1.  The Funds advised Defendant of the underpayment amount by letters dated September 29, 2016, and April 29, 2020, and they demanded payment.  Compl. ¶ 36; Puccio Decl. ¶ 29, Exh. 5.  Defendant failed to remit payment as to the outstanding contributions. Compl. ¶ 37; Puccio Decl. ¶ 30.  Plaintiffs also submit with their motion copies of the remittance reports and the applicable rate schedules for the period of the CBA.  Puccio Decl. Exh. 2 at 1-2; Exh. 4.  This evidence is sufficient to award Plaintiffs damages for the unpaid self-reported contributions.  See, e.g., Gesualdi v. LT Assocs., Inc., No. 14 Civ. 4024 (JS) (ARL), 2018 WL 6718598, at *6 (E.D.N.Y. Jan. 11, 2018), R&R adopted as modified, 2018 WL 879001 (Feb. 14, 2018); Gesualdi v. Interstate Dev. Grp. Inc., No. 14 Civ. 7091 (ADS) (ARL), 2016 WL 1019243, at *4 (E.D.N.Y. Feb. 23, 2016), R&R adopted, 2016 WL 958236 (Mar. 14, 2016).  I respectfully recommend that Plaintiffs be awarded a total of $149,850.07 in unpaid self-reported contributions.

### 2.   Unpaid Contributions Based On Audit Findings

Plaintiffs seek $28,258.81 in unpaid contributions as revealed by Audit 16-0933.  Pls.' Memo. at 7-8; Compl. ¶ 38; Remache Decl. ¶ 16, Exh. 1 at 2.  The auditor reviewed Defendant's books and records, specifically the "weekly payroll reports; quarterly payroll reports; 109 Forms for the pertinent period; Bank Statements and Check Register; 1120 Forms for the pertinent period; [and the] database provided by the Funds containing remitted hours and shop steward hours" from September 1, 2014, through August 28, 2016, to determine whether Defendant reported the correct number of hours on its monthly remittance reports described above. Remache Decl. ¶¶ 8, 11, 13.  After analyzing Defendant's documents, the auditor determined

Defendant had underreported 3,306.75 hours of covered work to the Funds,[8] which when multiplied by the applicable rates, amounted to unpaid contributions of $28,258.81.  Id. ¶¶ 16-18, Exh. 1 at 1-2.  Plaintiffs demanded payment of the unpaid contributions, but Defendant has failed to remit payment as to the outstanding contributions.  Compl. ¶¶ 39-40.  This evidence is sufficient to award Plaintiffs damages for the unpaid contributions.  See, e.g., Gesualdi v. Scara-Mix, Inc., No. 14 Civ. 765 (JS) (AKT), 2017 WL 5564373, at *6-7 (E.D.N.Y. Nov. 17, 2017) (audit by an independent auditor and affidavit of auditor, along with information in motion was sufficient to establish damages); Gesualdi v. Specialty Flooring Sys., Inc., No. 11 Civ. 537 (JS) (ARL), 2014 WL 2208195, at *3-4 (E.D.N.Y. May 28, 2014) (same), R&R adopted as modified, 2014 WL 4385417 (Sept. 3, 2014).  I respectfully recommend that the Court award Plaintiffs $28,258.81 in unpaid contributions.

### 3. Unpaid Estimated Contributions

Pursuant to the CBA and Trust Agreement, Defendant was required to submit remittance reports to the Funds reporting all hours worked in covered employment and to contribute to the Funds at the applicable rates for such work.  Compl. ¶¶ 16, 28.  Defendant failed to submit remittance reports and to remit contributions to the Funds for August 2016 through June 2017, despite demands to do so.  Puccio Decl. ¶¶ 35-40, Exh. 6; see Compl. ¶¶ 28-31.  Pursuant to the formula set forth in Article IX, Section 1(e) of the Trust Agreement, which permits increased monthly contributions when remittance reports are not submitted, Defendant owes estimated

---

[8] This figure includes a deduction of 24 hours classified as over-included on the remittance reports. See Remache Decl. Exh. 1 at 1-2.

contributions totaling $96,035.50 for unreported months.[9]  Puccio Decl. ¶¶ 41-44, Exh. 1 at 25-26.  Article IX, Section 1(f) of the Trust Agreement further provides that "The amount of contributions so computed shall be binding on the Employer for the purposes of any legal proceeding."  Puccio Decl. Exh. 1 at 26.  The affidavits setting forth application of this formula and other documentation provided by Plaintiffs are sufficient evidence to award Plaintiffs damages for the unpaid estimated contributions.  See Gesualdi v. Acme Skillman Concrete Co., No. 16 Civ. 3434 (DLI) (RML), 2016 U.S. Dist. LEXIS 161303, at *10-12 (E.D.N.Y. Nov. 18, 2016) (applying an apparently identical estimating formula set forth in the operative trust agreement to award unpaid contributions), R&R adopted, 2107 U.S. Dist. LEXIS 57891 (Apr. 11, 2017); Gesualdi v. Tapia Trucking LLC, No. 11 Civ. 4174 (DLI) (JMA), 2012 WL 7658194, at *2 (E.D.N.Y. Oct. 15, 2012) (same), R&R adopted, 2013 WL 831134 (Mar. 6, 2013).  I respectfully recommend that the Court award Plaintiffs $96,035.50 in unpaid estimated contributions.

## B.  Interest

Plaintiffs are entitled to prejudgment interest on the delinquent contributions.  29 U.S.C. § 1132(g)(2)(B).  The ERISA provides "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26."  29 U.S.C. § 1132(g)(2)(E).  Article IX, Section 3 and Amendment I of the Trust Agreement require an employer to pay interest on unpaid

---

[9] Plaintiffs calculate this amount by finding the total estimated contribution payments per month to be $9,603.55 and multiplying that by 10 to cover the 10-month period of September 2016 through June 2017.  Puccio Decl. ¶¶ 41-42.  Although Plaintiffs state Defendant has not submitted remittance reports for August 2016 as well, unpaid contributions for the month of August 2016 are covered by the amounts found due and owing pursuant to Audit 16-0933.  Id. ¶ 43.

contributions due to the Funds at the rate of one and one-half percent (1.5%) per month, or eighteen percent (18%) per year, from the date when the contributions were due to the date when payment is made.  Puccio Decl. Exh. 1 at 27 and Amendment 1.

The interest on unpaid contributions is calculated by (1) multiplying the amount of unpaid contributions due by eighteen percent (.18), then (2) dividing the resulting number by 365 days to determine a daily interest amount, and (3) multiplying the daily interest amount by the number of days between the date when contributions were due through the date of calculation. Pls.' Memo. at 12; Muller Decl. ¶ 14.

### 1.  Interest Due On Unpaid Self-Reported Contributions

Plaintiffs calculate the interest due for unpaid self-reported contributions as of May 31, 2020 by multiplying the unpaid contributions per month by 18%, dividing by 365, and multiplying that amount by the number of days the contributions were past due as of May 31, 2020.  See Muller Decl. ¶ 15.  Plaintiffs seek a total of $125,940.80 in interest on unpaid self-reported contributions as of May 31, 2020.  Id.; Pls.' Memo. at 12.  The Court notes there are some errors in Plaintiffs' interest chart at Muller Decl. ¶ 15.  For example, starting with the row for "Month Ending Date" of 4/30/2015 and down, these rows each have the incorrect "Contribution Due Date."[10]  The Court thus recalculates the interest due on the unpaid self-reported contributions from the remittance reports as of August 13, 2021, and finds that Plaintiffs

---

[10] The CBA provides that the unpaid contributions become due 45 days from the last day of the month for which the hours are reported.  Puccio Decl. ¶ 32, Exh. 2 at § 13(F).  As such, the due date for the month-end of 4/30/2015 would be 6/14/2015, not 5/15/2015.  See Muller Decl. ¶ 15. The rows below this entry in the Muller Declaration contain similar mistakes.

are due $156,730.70 in interest on unpaid self-reported contributions as of that date.

| Month Ending Date | Contribution Due Date | Date of Calculation | Days Late | Contributions Amount Due | Interest Rate | Interest Due | Per Diem Int. Due |
|---|---|---|---|---|---|---|---|
| 9/30/2014 | 11/14/2014 | 8/13/2021 | 2464 | $6,672.40 | 18.00% | $8,107.79 | $3.29 |
| 10/31/2014 | 12/15/2014 | 8/13/2021 | 2433 | $8,340.50 | 18.00% | $10,007.23 | $4.11 |
| 11/30/2014 | 1/14/2015 | 8/13/2021 | 2403 | $6,672.40 | 18.00% | $7,907.07 | $3.29 |
| 12/31/2014 | 2/14/2015 | 8/13/2021 | 2372 | $6,672.40 | 18.00% | $7,805.06 | $3.29 |
| 1/31/2015 | 3/17/2015 | 8/13/2021 | 2341 | $6,672.40 | 18.00% | $7,703.06 | $3.29 |
| 3/31/2015 | 5/15/2015 | 8/13/2021 | 2282 | $5,337.92 | 18.00% | $6,007.13 | $2.63 |
| 4/30/2015 | 6/14/2015 | 8/13/2021 | 2252 | $5,337.92 | 18.00% | $5,928.16 | $2.63 |
| 5/31/2015 | 7/15/2015 | 8/13/2021 | 2221 | $6,672.40 | 18.00% | $7,308.20 | $3.29 |
| 6/30/2015 | 8/14/2015 | 8/13/2021 | 2191 | $6,547.29 | 18.00% | $7,074.30 | $3.23 |
| 7/31/2015 | 9/14/2015 | 8/13/2021 | 2160 | $6,936.40 | 18.00% | $7,388.69 | $3.42 |
| 8/31/2015 | 10/15/2015 | 8/13/2021 | 2129 | $7,630.04 | 18.00% | $8,010.91 | $3.76 |
| 9/30/2015 | 11/14/2015 | 8/13/2021 | 2099 | $6,936.40 | 18.00% | $7,180.03 | $3.42 |
| 10/31/2015 | 12/15/2015 | 8/13/2021 | 2068 | $6,589.58 | 18.00% | $6,720.29 | $3.25 |
| 11/30/2015 | 1/14/2016 | 8/13/2021 | 2038 | $8,670.50 | 18.00% | $8,714.21 | $4.28 |
| 12/31/2015 | 2/14/2016 | 8/13/2021 | 2007 | $6,936.40 | 18.00% | $6,865.33 | $3.42 |
| 1/31/2016 | 3/16/2016 | 8/13/2021 | 1976 | $7,976.86 | 18.00% | $7,773.18 | $3.93 |
| 2/29/2016 | 4/14/2016 | 8/13/2021 | 1947 | $6,936.40 | 18.00% | $6,660.08 | $3.42 |
| 3/31/2016 | 5/15/2016 | 8/13/2021 | 1916 | $6,936.40 | 18.00% | $6,554.04 | $3.42 |
| 4/30/2016 | 6/14/2016 | 8/13/2021 | 1886 | $6,936.40 | 18.00% | $6,451.42 | $3.42 |
| 5/31/2016 | 7/15/2016 | 8/13/2021 | 1855 | $6,589.58 | 18.00% | $6,028.11 | $3.25 |
| 6/30/2016 | 8/14/2016 | 8/13/2021 | 1825 | $3,468.20 | 18.00% | $3,121.38 | $1.71 |
| 7/31/2016 | 9/14/2016 | 8/13/2021 | 1794 | $8,381.28 | 18.00% | $7,415.02 | $4.13 |
| | | | | | Total: | $156,730.70 | |

Applying the same formula mentioned above, Plaintiffs calculate the $73.90 daily interest rate by multiplying the amount of unpaid self-reported contributions, $149,850.07, by 18% and dividing by 365. See Muller Decl. ¶ 16. As such, Plaintiffs request $73.90 per day in interest from Defendant for delinquent ERISA contributions after the date of the August 13, 2021, calculation above through the date judgment is entered. See Pls.' Memo. at 12. I respectfully recommend that the Court award Plaintiffs $156,730.70 in prejudgment interest on the unpaid self-reported contributions through August 13, 2021. I also recommend that the Court award Plaintiffs an additional sum of interest on the unpaid self-reported contributions calculated at

$73.90 per day from August 14, 2021, through the date judgment is entered by the Court.

### 2. Interest Due On Unpaid Contributions Based On Audit Findings

The audit report determined that $5,816.48 in interest was due on the amount of unpaid contributions calculated by the audit as of March 14, 2017. Remache Decl. ¶ 21, Exh. 1 at 2; Muller Decl. ¶ 29. By using the formula described above, Plaintiffs calculate that Defendant owes $16,346.75 in interest for the period between March 15, 2017, through May 31, 2020. Muller Decl. ¶ 30.[11] To update this interest calculation, the Court finds that Plaintiffs are due $22,478.53 in interest on the amount of unpaid contributions calculated by the audit for the period of March 15, 2017, through August 13, 2021, inclusive.

| Start Date (Inclusive) | Date of Calculation | Total Number of Days | Contributions Amount Due | Interest Rate | Interest Due | Per Diem Int. Due |
|---|---|---|---|---|---|---|
| 3/15/2017 | 8/13/2021 | 1613 | $28,258.81 | 18.00% | $22,478.53 | $13.94 |

Applying the same formula, Plaintiffs calculate the $13.94 daily interest rate by multiplying the amount of unpaid contributions, $28,258.81, by 18% and dividing by 365. Remache Decl. ¶ 31. As such, Plaintiffs request $13.94 per day in interest from Defendant for delinquent ERISA contributions after the date of the August 13, 2021, calculation above through the date judgment is entered. See Pls.' Memo. at 13. I respectfully recommend that the Court award Plaintiffs $28,295.01 in prejudgment interest on the unpaid contributions through August 13, 2021. I also recommend that the Court award Plaintiffs an additional sum of interest on the unpaid contributions calculated at $13.94 per day from August 14, 2021, through the date

---

[11] The Court's calculation arrives at $16,360.69 for the period of March 15, 2017, through May 31, 2020, inclusive. It appears that Plaintiffs' calculation was one day short, perhaps not accounting for 2020 as a leap year. Despite the typographical error, the Court understands what Plaintiffs are asking for, and at any rate, has recalculated the interest to bring it up to date.

judgment is entered by the Court.

### 3.  Interest Due on Unpaid Estimated Contributions

Plaintiffs estimate that Defendant owes unpaid contributions of $96,035.50 for the period of September 2016 through June 2017.  Puccio Decl. ¶¶ 41-44; Muller Decl. ¶ 22.  Using the same formula described above, Plaintiffs calculate that Defendant owes $54,804.96 in interest as of May 31, 2020.  Muller Decl. ¶ 24.  Likewise, Plaintiffs calculate the $47.36 daily interest rate by multiplying the amount of underpaid contributions, $96,035.50, by 18% and dividing by 365.  See id. ¶ 25.  As such, Plaintiffs request $47.36 per day in interest from Defendant for delinquent ERISA contributions from June 1, 2020, through the date judgment is entered.  The Court finds these numbers to be accurate, but has recalculated the interest to bring it up to date, and finds that Plaintiffs are due $75,595.99 in interest on the unpaid estimated contributions as of August 13, 2021.

| Month Ending Date | Contribution Due Date | Date of Calculation | Days Late | Contributions Amount Due | Interest Rate | Interest Due | Per Diem Int. Due |
|---|---|---|---|---|---|---|---|
| 9/30/2016 | 11/14/2016 | 8/13/2021 | 1733 | $9,603.55 | 18.00% | $8,207.48 | $4.74 |
| 10/31/2016 | 12/15/2016 | 8/13/2021 | 1702 | $9,603.55 | 18.00% | $8,060.67 | $4.74 |
| 11/30/2016 | 1/14/2017 | 8/13/2021 | 1672 | $9,603.55 | 18.00% | $7,918.59 | $4.74 |
| 12/31/2016 | 2/14/2017 | 8/13/2021 | 1641 | $9,603.55 | 18.00% | $7,771.77 | $4.74 |
| 1/31/2017 | 3/17/2017 | 8/13/2021 | 1610 | $9,603.55 | 18.00% | $7,624.96 | $4.74 |
| 2/28/2017 | 4/14/2017 | 8/13/2021 | 1582 | $9,603.55 | 18.00% | $7,492.35 | $4.74 |
| 3/31/2017 | 5/15/2017 | 8/13/2021 | 1551 | $9,603.55 | 18.00% | $7,345.53 | $4.74 |
| 4/30/2017 | 6/14/2017 | 8/13/2021 | 1521 | $9,603.55 | 18.00% | $7,203.45 | $4.74 |
| 5/31/2017 | 7/15/2017 | 8/13/2021 | 1490 | $9,603.55 | 18.00% | $7,056.64 | $4.74 |
| 6/30/2017 | 8/14/2017 | 8/13/2021 | 1460 | $9,603.55 | 18.00% | $6,914.56 | $4.74 |
| | | | | | **Total:** | **$75,595.99** | |

I respectfully recommend that the Court award Plaintiffs $75,595.99 in prejudgment interest on the unpaid contributions through August 13, 2021.  Furthermore, I recommend that the Court award Plaintiffs an additional sum of interest on the unpaid contributions calculated at

$47.36 per day from August 14, 2021, through the date judgment is entered by the Court.

### C. Liquidated Damages

"Section 502 of ERISA provides for liquidated damages in an amount equal to the greater of the interest due on the unpaid contributions, or up to twenty percent of the unpaid contributions as provided in the collective bargaining and trust agreements." Sullivan, 2011 WL 5401987, at *6; see Gesualdi v. D. Gangi Cont. Corp., No. 18 Civ. 3773 (FB) (SJB), 2019 WL 1130729, at *7 (E.D.N.Y. Feb. 11, 2019), R&R adopted, 2019 WL 1128356 (Mar. 12, 2019). The Trust Agreement, Article IX, Section 3, is consistent with the maximum allowance under ERISA. See Puccio Decl. Exh. 1 at 28.

#### 1. Liquidated Damages on Unpaid Self-Reported Contributions

As calculated above, Defendant owes unpaid contributions for the period of September 2014 through July 2016 in the amount of $149,850.07, and the interest due as of August 13, 2021, is $156,730.70 plus $73.90 per day from August 14, 2021, through the date judgment is entered by the Court. As interest due is greater than 20% of the outstanding contributions for the relevant period, Plaintiffs request liquidated damages equal to interest owed. Pls.' Memo. at 12. I respectfully recommend that the Court award Plaintiffs liquidated damages of $156,730.70 plus $73.90 per day from August 14, 2021, through the date judgment is entered by the Court.

#### 2. Liquidated Damages on Unpaid Contributions Based On Audit Findings

As calculated above, Defendant owes unpaid contributions pursuant to Audit 16-0933 in the amount of $28,258.81, and the interest due as of August 13, 2021, is $28,295.01 plus $13.94 per day from August 14, 2021, through the date judgment is entered by the Court. As interest due is greater than 20% of the outstanding contributions for the relevant period, Plaintiffs request liquidated damages equal to interest owed. Pls.' Memo. at 13. I respectfully recommend that the

Court award Plaintiffs liquidated damages of $28,295.01 plus $13.94 per day from August 14, 2021, through the date judgment is entered by the Court.

### 3. Liquidated Damages on Unpaid Estimated Contributions

As calculated above, Defendant owes unpaid contributions for the period of September 2016 through June 2017 in the amount of $96,035.50, and the interest due as of August 13, 2021, is $75,595.99 plus $47.36 per day from August 14, 2021, through the date judgment is entered by the Court. As interest due is greater than 20% of the outstanding contributions for the relevant period, Plaintiffs request liquidated damages equal to interest owed. I respectfully recommend that the Court award Plaintiffs liquidated damages of $75,595.99 plus $47.36 per day from August 14, 2021, through the date judgment is entered by the Court.

### D. Audit Costs

Plaintiffs request $850.00 for the cost of the audit plus $780.00 for audit cancellation fees. Pls.' Memo at 14-15. "Requests for audit fees must be supported by records . . . sufficient to allow the court to determine the reasonableness of audit costs." Trs. of Steamfitters' Local Union No. 638 v. Nexus Mech., Inc., No. 08 Civ. 3214 (RRM) (MDG), 2014 WL 1338377, at *8 (E.D.N.Y. Apr. 2, 2014) (internal quotation marks & citations omitted) (adopting report & recommendation). "The evidence in support of recovering audit fees must include, at a minimum, some breakdown of the auditors' rates charged and hours expended." Gesualdi v. Diversified Carting, Inc., No. 10 Civ. 2561 (SIL), 2014 WL 5475357, at *3 (E.D.N.Y. Oct. 29, 2014) (internal quotation marks & citation omitted).

The sole documentary evidence in support of the $850.00 request for audit fees is the audit report. Remache Decl. Exh. 1 at 2. This information alone, however, is insufficient to allow a determination of whether the audit costs are reasonable. It is within the Court's

discretion to award "legal or equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2)(E).  As "'some work was clearly conducted by the auditors [] it would be unfair to entirely deny plaintiffs the costs of the audit.'"  Diversified Carting, 2014 WL 5475357, at *3 (quoting Gesualdi v. Fortunata Carting Inc., 5 F. Supp. 3d 262, 283 (E.D.N.Y. 2014) (adopting report & recommendation)).  Pursuant to Article IX, Section 3(b) of the Trust Agreement, the Funds are entitled to collect auditor's fees of "$350, or other such amounts as the Trustees in their discretion shall apply, plus travel expenses, for each day expended in auditing" Defendant. See Puccio Decl. Exh. 1 at 27.  The audit report appears to indicate that the audit occurred in one day.  See Remache Decl. Ex. 1 at 3 (listing "Audit Date(s)" as September 16, 2016).  The audit report does not indicate hours worked, the auditor's rate or travel expenses, if any.  As such, the Court finds reasonable an award of $350.00 for one day of audit fees pursuant to the Trust Agreement.  See Diversified Carting, 2014 WL 5475357, at *3.  I respectfully recommend that Plaintiffs be awarded $350.00 for audit fees.

Pursuant to Article IX, Section 3(b) of the Trust Agreement, the Funds have the right to charge a fee equivalent to the cost of one-half day of auditing, plus any travel expenses, if Defendant cancels an audit with less than one week's notice.  See Puccio Decl. Exh. 1 at 28.  The cancellation letters state Defendant cancelled the audit appointments three times without providing one week's notice and that Defendant owes $260.00 for each late cancellation.  Puccio Decl. ¶ 49, Exh. 7.  For each scheduled audit, Defendant cancelled it either the same day or two days prior.  See Puccio Decl. Exh. 7.  Defendant has not paid the cancellation fees.  Puccio Decl. ¶ 50.  As such, the Court finds Plaintiffs are entitled to an award for cancellation fees.  Cf. Gesualdi v. Mech. Insulation Inc., No. 14 Civ. 724 (JS) (SIL), 2015 WL 729728, at *10 (E.D.N.Y. Feb. 18, 2015) (declining to award plaintiffs the cancellation fee where "there is no

allegation or proof in the record that [defendant] was responsible for the cancellation at issue here") (adopting report & recommendation).  As discussed above as to audit fees, Plaintiffs have not provided any documentation for the Court to evaluate the reasonableness of the audit fees.  As the cancellation fees are determined by the audit fees, the Court again refers to the $350.00 per day fee in the Trust Agreement to calculate the one-half day fee.  As such, the Court finds reasonable an award of $175.00 for each audit cancelled by Defendant with less than one week's notice.  I respectfully recommend Plaintiffs be awarded $525.00 for audit cancellation fees.

### E.  Attorney's Fees and Costs

ERISA "mandates the granting of reasonable attorneys' fees and costs in ERISA matters brought by fiduciaries to enforce the terms of the collective bargaining agreement."  Sheet Metal Workers' Nat'l Pension Fund v. RHB Installations Inc., No. 12 Civ. 2981 (ADS) (AYS), 2015 WL 1509498, at *5 (E.D.N.Y. Mar. 31, 2015) (internal quotation marks & alterations omitted) (adopting report & recommendation); see 29 U.S.C. § 1132(g)(2).  The Trust Agreement also provides for the award of reasonable attorneys' fees and costs at Article IX, Section 3(a).  See Puccio Decl. Exh. 1 at 27.  Plaintiffs' counsel requests $8,355.50 in attorneys' fees and $737.92 in costs relating to this litigation.  See Pls.' Memo at 16-17; Muller Decl. ¶ 43, Exh. 4.

The prevailing method for determining a presumptively reasonable fee award on a fee application is the lodestar method, by which the court multiplies a reasonable hourly rate by the reasonable number of hours expended.  See RHB Installations, 2015 WL 1509498, at *5.  The reasonable hourly rate is determined based on current market rates "for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  In reviewing the reasonable number of hours expended, "a district court should 'examine[ ] the particular hours expended by counsel with a view to the value of the work

product of the specific expenditures to the client's case,' and if it 'concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation.'" Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010) (quoting Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997)).  A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed through contemporaneous time records that describe with specificity the date, the hours expended, and the nature of the work done.  See N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

Plaintiffs' counsel requests an award of $8,355.50 in attorneys' fees for 23.35 hours expended at an hourly attorney rate of $410.00 and an hourly legal assistant rate of $120.00.  See Pls.' Memo. at 16; Muller Decl. ¶¶ 42-43, Exh. 4.  Plaintiffs were represented in this action by Arthur J. Muller, III ("Muller").  Muller is an associate at Trivella & Forte, LLP with nearly five years of experience representing employee benefit plans.  Muller Decl. ¶ 46.  Muller graduated from Pace University School of Law in 2015, magna cum laude, and holds an MBA from Stony Brook University with concentrations in finance and management.  Id.  Michelle Salerno ("Salerno") has a degree in paralegal studies from St. John's University and has over twenty years' experience in litigation, with more than ten in the ERISA litigation field.  Id. ¶ 48.  The Court notes that as recently as March 2021, Muller and Salerno have been awarded the rates requested here.  See Gesualdi v. Nastasi & Assocs., Inc., No. 19 Civ. 2077 (JS) (AYS), 2021 WL 966326, at *2-3 (E.D.N.Y. Feb. 11, 2021), R&R adopted, 2021 WL 1115606 (Mar. 24, 2021); Gesualdi v. Tadco Constr. Corp., No. 19 Civ. 5606 (JS) (AYS), 2021 WL 260564, at *4 (E.D.N.Y. Jan. 5, 2021), R&R adopted, 2021 WL 260094 (Jan. 26, 2021).  The hourly rate of $410.00 for an associate with less than five years' experience and an hourly rate of $120.00 for a legal assistant appear to be out of step with the rates typically awarded in this District.  See, e.g.,

Finkel v. Uptown Communs. & Elec., No. 20 Civ. 32 (RPK) (RML), 2021 U.S. Dist. LEXIS 134471, at *11-12 (E.D.N.Y. July 19, 2021) (finding hourly rates of $350.00 for a partner with 7 years' experience litigating ERISA claims and $100.00 for paralegal reasonable based on prevailing rates in this District) (collecting cases); Ret. Fund of Local 1482 Paint & Allied Prod. Mfrs. v. N. Adhesives, Inc., No. 19 Civ. 5609 (MKB) (RER), 2020 WL 6370060, at *4 (E.D.N.Y. May 27, 2020) (collecting cases and stating that "reasonable rates for the Eastern District rang[e] from $300 to $450 per hour for partners, $200 to $300 per hour for senior associates, $100 to $200 per hour for junior associates, and $70 to $100 per hour for paralegals"), R&R adopted, 2020 WL 5587271 (Sept. 17, 2020); D. Gangi Cont., 2019 WL 1130729, at *8 (finding hourly rate of $450.00 for partner work and $120.00 for paralegal work unreasonable, noting reasonable rates in this District are $300.00 to $450.00 for partners and $70.00 to $80.00 for legal assistants and that given "the relative simplicity of ERISA" fee awards tend to be on the lower end of the range).  Thus, the Court finds reasonable a reduction in the hourly rates for Muller and Salerno to $250.00 and $100.00, respectively.

Plaintiffs' application is supported by contemporaneous time records that detail the tasks Muller and Salerno performed in connection with this action, as well as the time expended on each task.  Muller Decl. Exh. 4.  The fees requested relate to the investigation of the claims, document review, drafting of the complaint, court conferences, and the instant motion pending before the Court.  Muller Decl. ¶ 45, Exh. 4.  Having reviewed the records, this Court finds the number of hours expended, 23.35, to be reasonable.  See, e.g., Trs. of the Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Nus Constructing, Inc., No. 17 Civ. 5037 (RID) (CLP), 2018 WL 4328829, at *7 (E.D.N.Y. Aug. 6, 2018) (awarding fees for 25.7 hours of work in a similar ERISA default), R&R adopted,

ECF No. 27 (Sept. 11, 2018); <u>Trs. of Local 7 Tile Indus. Welfare Fund v. Tuscany Tile & Stone, Inc.</u>, No. 16 Civ. 1641 (LDH) (LB), 2017 WL 3173015, at *6 (E.D.N.Y. Feb. 15, 2017), <u>R&R adopted</u>, 2017 WL 3172997 (July 25, 2017) (awarding fees for 21.5 hours of work in a similar ERISA default; <u>Gesualdi v. Interstate Masonry Corp.</u>, No. 12 Civ. 383 (NGG) (VMS), 2014 WL 1311709, at *13 (E.D.N.Y. Mar. 28, 2014) (finding 23 hours spent on an ERISA default reasonable and collecting cases in which reasonable hours expended ranged from 14 to 28 hours) (adopting report & recommendation).

As such, the Court finds an award to Plaintiffs of $5,207.50 in attorneys' fees reasonable based on the revised calculations below:

|  | Hours | Old Rate | Old Total | Revised Rate | Revised Total |
|---|---|---|---|---|---|
| Arthur J. Muller | 19.15 | $410.00 | $7,851.50 | $250.00 | $4,787.50 |
| Michelle Salerno | 4.20 | $120.00 | $504.00 | $100.00 | $420.00 |

Plaintiffs also seek to recover $737.92 in costs associated with the filing fee, charges for service of process, and postage. Pls.' Memo. at 17; Muller Decl. ¶ 43, Exh. 4. "Courts typically allow counsel to recover their reasonable out-of-pocket expenses." <u>Viafara v. MCIZ Corp.</u>, No. 12 Civ. 7452 (RLE), 2014 WL 1777438, at *15 (S.D.N.Y. May 1, 2014). Having reviewed the itemized list of costs, the Court finds an award to Plaintiffs of $737.92 reasonable.

I respectfully recommend Plaintiffs be awarded $5,207.50 in attorneys' fees and $737.92 in litigation costs.

## VIII.   INJUNCTIVE RELIEF

In an action brought under Section 1145 of ERISA, a court may award in addition to monetary damages "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). While "[t]he moving party is entitled to all reasonable inferences from

the evidence it offers," Plaintiffs must "provide[] adequate support for the relief they seek." Ferrara v. All Am. Trucking Servs., Inc., No. 11 Civ. 1157 (ADS) (AKT), 2012 WL 1042936, at *2 (E.D.N.Y. Feb. 17, 2012) (internal citations omitted), R&R adopted, 2012 WL 1041840 (Mar. 28, 2012).

Plaintiffs request this Court to order Defendant to submit books and records for JH Reid On Site Recycling and JH Reid Holdings I, LLC for the period of September 1, 2014, through August 28, 2016, pursuant to Article IX, Section 1(d) of the Trust Agreement.  See Pls.' Memo. at 8-9; Puccio Decl. Exh. 1 at 25.  The Trust Agreement defines pertinent books and records to include "the books and records of any business . . . which either: 1) has employed persons who have performed the same type of work as the employees of the Employer covered by the Union agreement, or 2) is part of a group of trades or businesses 'under common control,' as that term is used in 29 U.S.C. § 1301(b)(1) for withdrawal liability purposes[.]"  Puccio Decl. Exh. 1 at 25.

Plaintiffs state in their complaint that "[u]pon information and belief" Defendant was required to produce the books and records of JH Reid On Site Recycling and JH Reid Holdings I, LLC.  Compl. ¶ 44.  Plaintiffs also state in their motion that "[d]uring the course of Audit # 16-0933, Mr. Remache uncovered two affiliate entities."  Pls.' Memo. at 8.  Upon review of the evidence submitted with Plaintiffs' motion, the Court notes that the Funds' auditor only noted the possibility of affiliated entities.  See Remache Decl. ¶ 24 ("noted two potential non-signatory affiliates."), Exh. 1 at 3 ("Please note that there are two possible Non-Signatory Affiliates").  In fact, the only document Plaintiffs submitted to the Court in support of their motion mentioning these companies states: "The Employer stated that both companies are not affiliated with 'JH Reid General Contractor' and that payments to these companies were for loan and interest

purposes."  Remache Decl. Exh. 1 at 3.

Unlike the cases Plaintiffs cite in their motion, Plaintiffs have not provided sufficient support that JH Reid On Site Recycling or JH Reid Holdings I, LLC are indeed affiliated entities such that Plaintiffs would be entitled to audit their books and records.  Neither Plaintiffs' complaint nor the sworn declarations submitted with Plaintiffs' motion for default judgment contains allegations that these companies shared the same related owners and locations as Defendant, or that they performed work covered by the CBA.  Cf. Ferrara v. Pomarc Indus., Inc., No. 11 Civ. 1859 (RRM) (MDG), 2013 WL 3990746, at *4 (E.D.N.Y. Aug. 5, 2013) (finding plaintiffs have the right to audit Low Pro's books and records where "[i]t is undisputed that Pomarc and Low Pro share common ownership, operate out of the same location, employ truck drivers and that Pomarc refused to permit an audit of Low Pro's books and records which apparently were available at the same office") (adopting report & recommendation); Finkel v. Millennium Fire Servs., LLC, No. 09 Civ. 540 (RRM) (CLP), 2011 WL 866995, at *15-16 (E.D.N.Y. Feb. 16, 2011) (recommending that defendant and its affiliate be ordered to submit to audit based on allegations of related owners, shared location and affiliate performing work covered by CBA), R&R adopted, 2011 WL 864317 (Mar. 9, 2011), and R&R adopted, 2011 WL 1321986 (Apr. 6, 2011).[12]  I respectfully recommend denying Plaintiffs' request for injunctive relief.

Plaintiffs also requested "an order compelling the Defendant to submit remittance reports

---

[12] The third case on which Plaintiffs rely is an order granting summary judgment after limited discovery on the issue of whether Brooklyn Rebar was an affiliate of the defendant.  The court determined Brooklyn Rebar was an affiliate based on the defendant's tax records, and because the evidence in the record established Brooklyn Rebar shared common ownership and employed workers covered by the CBA.  See Gesualdi v. Reinforcing Supply, LLC, No. 12 Civ. 5406 (SJF) (AKT), 2014 WL 4629047, at *4-5 (E.D.N.Y. Sept. 12, 2014).

and contributions for the period August 2016 through June 2017 and to submit to audit for the period August 29, 201[6] through June 31, 2017, and/or pay estimated contributions for the period September 2016 through June 2017." Pls.' Memo. at 1 (emphasis added). As discussed above, the undersigned recommends awarding Plaintiffs estimated damages for August 2016 based on Audit 16-0933 and for the period of September 2016 through June 2017 based on Defendant's failure to submit remittance reports and failure to submit to audit pursuant to the Trust Agreement. It would be unreasonable "at this stage to issue an affirmative injunction ordering defendants to submit to an audit for this exact same period of time, when plaintiffs are recovering estimated damages that have been calculated [pursuant to an audit or] in the manner prescribed under the Trust Agreement." See Gesualdi v. MBM Indus., Inc., No. 10 Civ. 2607 (BMC), 2010 WL 3724348, at *3 (E.D.N.Y. Sept. 15, 2010); Ferrara v. Metro D Excavation & Found., Inc., No. 10 Civ. 4215 (SLT) (JB), 2011 WL 3610896, at *8 (E.D.N.Y. July 7, 2011) (denying request for an order requiring employer to submit to an audit because report already recommended that plaintiff be awarded "estimated unpaid contributions . . . in accordance with the formulas set forth in the trust agreement"), R&R adopted, 2011 WL 3625448 (Aug. 16, 2011). I respectfully recommend that Plaintiffs' request for an order requiring Defendant to submit remittance reports and submit to an audit for the period of August 2016 through June 2017 be denied.

## IX.   CONCLUSION

For the foregoing reasons, this Court respectfully recommends that a default judgment is warranted and should be granted against Defendant, and Plaintiffs be awarded relief in the

following amounts:

|  | Damages | Interest | Liquidated Damages |
|---|---|---|---|
| Unpaid Self-Reported Contributions for the period of September 2014 through July 2016 | $149,850.07 | $156,730.70 plus $73.90 per day from August 14, 2021, to the date judgment is entered by the Court | $156,730.70 plus $73.90 per day from August 14, 2021, to the date judgment is entered by the Court |
| Unpaid Contributions Pursuant to Audit 16-0933 | $28,258.81 | $28,295.01 plus $13.94 per day from August 14, 2021, to the date judgment is entered by the Court | $28,295.01 plus $13.94 per day from August 14, 2021, to the date judgment is entered by the Court |
| Unpaid Estimated Contributions for the period of September 2016 through June 2017 | $96,035.50 | $75,595.99 plus $47.36 per day from August 14, 2021, to the date judgment is entered by the Court | $75,595.99 plus $47.36 per day from August 14, 2021, to the date judgment is entered by the Court |
|  |  |  |  |
| Audit Fees | $350.00 |  |  |
| Audit Cancellation Fees | $525.00 |  |  |
| Attorneys' Fees | $5,207.50 |  |  |
| Costs | $737.92 |  |  |

Thus, I respectfully recommend that Plaintiffs be awarded damages of $274,144.38 plus the interest and liquidated damages described above; audit and audit cancellation fees of $875.00; attorneys' fees of $5,207.50; and costs of $737.92. This Court also respectfully recommends that Plaintiffs' requests for injunctive relief be denied.

## X.    OBJECTIONS

This report and recommendation will be filed electronically. The Court will mail a copy of this report and recommendation to: J.H. Reid, General Contractor, 3230 Hamilton Blvd., South Plainfield, New Jersey 07080; and J.H. Reid, General Contractor, c/o James Reid, 180

Whipporwill Valley Road, Atlantic Heights, New Jersey 07701.

Written objections to this report and recommendation must be filed with the Clerk of Court within the time permitted after service of the report and recommendation, and in accordance with the Individual Rules of the District Judge.  Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this report and recommendation.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

Dated:  Brooklyn, New York
        August 12, 2021

                                    *Vera M. Scanlon*
        _____
                                    VERA M. SCANLON
                                    United States Magistrate Judge